# NOT DESIGNATED FOR PUBLICATION

## STATE OF LOUISIANA

## COURT OF APPEAL

## FIRST CIRCUIT

## 2020 CJ 1317

STATE IN THE INTEREST OF S.M. (DOB: 07/11/06),
N.M. (DOB: 04/02/07), B.M. (DOB: 01/07/09), D.M. (DOB: 02/15/12),
K.M. (DOB: 01/08/13), C.M. (DOB: 06/27/13)

Judgment Rendered: **JUN 1 6 2021**

\* \* \* \* \*

On Appeal from the
Twenty-First Judicial District Court
In and for the Parish of Livingston
State of Louisiana
Juvenile Court No. J-14,593

The Honorable Blair Edwards, Judge Presiding

\* \* \* \* \*

Stephen M. Stafford
Walker, Louisiana

Attorney for Defendants/Appellants
L.M. and J.M.


Sherry Ann Powell
Laura Gill Slocum
Livingston, Louisiana

Attorneys for Plaintiff/Appellee
State of Louisiana, Department of
Children and Family Services

Kellie Johnson
Livingston, Louisiana

Attorney for the Minor Children
S.M., N.M., B.M., D.M., K.M., and
C.M.

\* \* \* \* \*

BEFORE: McDONALD, HOLDRIDGE, AND PENZATO, JJ.

**PENZATO, J.**

Appellants, L.M. and J.M., appeal a judgment which terminated their parental rights to S.M., N.M., B.M., D.M., K.M., and C.M.[1] For the reasons that follow, we affirm the trial court's judgment.

## FACTS AND PROCEDURAL HISTORY

On June 18, 2018, the State of Louisiana, through the Department of Children and Family Services (DCFS), filed an instanter order requesting an investigation into a report of physical abuse made on June 15, 2018, for the seven adopted children of appellants. Although the complaints of abuse began with two of the older children, S.M. and B.M., it was believed that all seven of the children were being physically abused, and the trial court signed an order permitting DCFS to temporarily remove all seven children, as had been verbally ordered on June 15, 2018. On July 17, 2018, an assistant district attorney for the 21st Judicial District Court, Parish of Livingston, filed a Child in Need of Care petition, requesting an adjudication by the trial court. Thereafter, beginning July 26, 2018, DCFS filed several case plans regarding the seven children, and the trial court regularly conducted case review hearings, maintaining the custody of the children with DCFS. The original case plan reflected the goal of reunification for all of the children with the appellants, with the concurrent goal of adoption. The goal was modified and approved by the trial court on August 20, 2019, to reunification for C.M., D.M., and E.M. and adoption for S.M., N.M., B.M., and K.M. On November 13, 2019, the trial court approved the case plan for reunification as to E.M., but the goal for C.M. and D.M. was changed to adoption. The trial court maintained the goal of adoption as to N.M., S.M., B.M., and K.M. The matter was set for a case review on January 29, 2020. On December

---

[1] Pursuant to Uniform Rules—Courts of Appeal, Rule 5-2, we use initials throughout this opinion to protect the identity of the minor children.

2

23, 2019, DCFS filed a case plan reflecting the goal for E.M. of reunification with appellants, and the goal of adoption for the remaining six children.

On January 28, 2020, DCFS, joined by an assistant district attorney for the 21st Judicial District Court, Parish of Livingston, filed a Certification for Adoption and Petition for Termination of Parental Rights. The petition for termination of parental rights detailed that the children had been in foster care since June 15, 2018, the date appellants were arrested for child abuse and neglect. The petition for termination of parental rights also enumerated the specific abuse that the children had undergone and noted that all of the children had seen mental health professionals since being under the care of DCFS. Furthermore, all of the children had previously been victims of abuse/neglect by their birth families and had been adopted by appellants, only to be re-victimized. DCFS alleged that it was in the best interest of the children to have the parental rights of appellants terminated under La. Ch.C. art. 1015(4), so the children could be adopted by other families. The petition for termination of parental rights requested that service of citation be made pursuant to La. Ch.C. art. 1021 and that a hearing be set within fifteen days pursuant to La. Ch.C. art. 1025.1.

The previously set case review hearing was held on January 29, 2020, and appellants were restored their parental rights as to E.M., after it was determined reunification was best for this child. However, the remaining six children were recommended by DCFS to be adopted. The trial court approved the case plan and goal of adoption for the remaining six children and signed a custody order for those children to remain in the custody of DCFS. As the petition for termination of parental rights had been filed the previous day, an order for service was signed on January 29, 2020, for appellants to appear on January 29, 2020, and service was requested to be in open court on that date. Appellants were served in open court with the petition for termination of parental rights. The custody order following the

3

case review hearing noted that an answer hearing was held that day and both parents denied the petition for termination of parental rights in open court. The trial regarding termination and certification for adoption took place on September 21, 23, and 25, 2020. Following the trial, a judgment was signed on October 7, 2020, terminating the parental rights of appellants as to S.M., N.M., B.M., D.M., K.M., and C.M., and certifying these children for adoption. It is from this judgment that appellants appeal.

## LAW AND DISCUSSION

Appellants claim that the trial court erred in granting the certification of adoption and the petition for termination of parental rights by not strictly adhering to La. Ch.C. arts. 1004, 1015, and 1021. Specifically, appellants maintain the trial court erred in allowing DCFS to proceed without the district attorney appointing a special counsel and in allowing an answer hearing less than five days from the service of the petition for termination of parental rights. Appellate review of questions of law is simply to determine whether the district court was legally correct. *McMillian v. Breen*, 2018-0998 (La. App. 1st Cir. 8/2/19), 282 So. 3d 239, 244. If the trial court's decision was based on its erroneous application of law, its decision is not entitled to deference by the reviewing court. *Kem Search, Inc. v. Sheffield*, 434 So. 2d 1067, 1071-72 (La. 1983). When an appellate court finds that a reversible error of law was made in the lower court, it must redetermine the facts *de novo* from the entire record and render a judgment on the merits. *See Lasha v. Olin Corp.*, 625 So. 2d 1002, 1006 (La. 1993).

### Authority to File Petition for Termination of Parental Rights

The interpretation of any statutory provision starts with the language of the statute itself. *Oubre v. Louisiana Citizens Fair Plan*, 2011-0097 (La. 12/16/11), 79 So. 3d 987, 997, *cert. denied*, 567 U.S. 935, 133 S.Ct. 30, 183 L.Ed.2d 677 (2012). It is a well-established principle of statutory construction that, absent clear evidence

4

of a contrary legislative intention, a statute should be interpreted according to its plain language. *Cleco Evangeline, LLC v. Louisiana Tax Commission*, 2001-2162 (La. 4/3/02), 813 So. 2d 351, 354. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. C.C. art. 9; *see also* La. R.S. 1:4. Words and phrases shall be read with their context and construed according to the common and approved usage of the language. La. R.S. 1:3. Further, every word, sentence, or provision in a law is presumed to be intended to serve some useful purpose, that some effect is given to each such provision, and that no unnecessary words or provisions were employed. *Oubre*, 79 So. 3d at 997.

Louisiana Children's Code article 1004 provides the general authority to file a petition to terminate parental rights. Two entities having such authority are the district attorney and DCFS. The district attorney is provided broad authority by La. Ch.C. art. 1004(C) to file a petition to terminate parental rights on any ground authorized by La. Ch.C. art. 1015, and DCFS is provided limited authority to file a petition for termination of parental rights under the circumstances provided in La. Ch.C. art. 1004(D).[2] However, La. Ch.C. art. 1004.1 mandates that DCFS file a petition for termination of parental rights when certain time limitations occur without regard to the grounds thereof. Louisiana Children's Code article 1004.1 specifically provides:

---

[2] DCFS alleged in its petition that it sought to terminate the parental rights of appellants pursuant to La. Ch.C. art. 1015(4). However, with regard to La. Ch.C. art. 1015(4), DCFS is specifically only allowed to file a petition to terminate parental rights pursuant to Subparts(4)(j) and (k), neither of which are applicable in the present case. La. Ch.C. art. 1004(D)(1) & (2). DCFS is granted limited authority to file a petition for termination of parental rights only for the certain grounds that are enumerated in La. Ch.C. art. 1015. La. Ch.C. art. 1004(D). Appellants maintain that because none of the grounds specified in La. Ch.C. art. 1004(D) are applicable in the present case, DCFS could only file a petition for termination of parental rights if the district attorney made a special appointment designating counsel of DCFS "as a special assistant authorized to act in his stead...." La. Ch.C. art. 1004(E). However, as will be explained in further detail, DCFS is mandated to petition for termination of parental rights when certain time limitations apply, without regard to the grounds, pursuant to La. Ch.C. art. 1004.1.

5

[DCFS] **shall file** and pursue to judgment in the trial court a petition to terminate the parental rights of the parent or parents if the child has been in state custody for seventeen of the last twenty-two months, unless [DCFS] has documented in the case plan a compelling reason why filing is not in the best interest of the child. (Emphasis Added).

As argued by DCFS, and noted by *State in Interest of D.B.A.*, 50,412 (La. App. 2nd Cir. 2/24/16), 190 So. 3d 316, 320, La. Ch.C. art. 1004 generally outlines the procedure for filing and identifies the proper party to file a petition for termination of parental rights under certain circumstances. Louisiana Children's Code article 1004.1 is more narrow and applies to a specific situation. While the general article is permissive on the timeline for filing, the latter specific article requires the DCFS to file under circumstances such as the ones present here. *State in Interest of D.B.A.*, 190 So. 3d at 320. Unlike La. Ch.C. art. 1004, La. Ch.C. art. 1004.1 does not limit the grounds upon which DCFS may file a petition for termination of parental rights when the child has been in the state's custody for the requisite period of time. *State in Interest of D.B.A.*, 190 So. 3d at 320.

In the present case, the children were in state custody for nineteen months at the time the petition for termination of parental rights was filed by DCFS. The children began in the custody of DCFS on June 15, 2018, and the petition for termination of parental rights was filed on January 28, 2020. Louisiana Children's Code article 1004.1 does not limit DCFS to a particular ground for filing such petition. Following the rules of statutory interpretation as set forth above, the legislature has mandated that DCFS file a petition for the termination of parental rights after the passage of seventeen months of state custody as authorized by La. Ch.C. art. 1004.1.

Appellants also rely on La. Ch.C. art. 1004(E) to argue that the district attorney in this matter did not appoint DCFS to "act in his stead" by a special appointment or appear at the proceedings. However, the district attorney did jointly sign the petition for termination of parental rights along with DCFS. However, even

6

if the district attorney had not joined the petition for termination of parental rights, DCFS was authorized to file such petition pursuant to La. Ch.C. art. 1004.1. Therefore, we find that the filing of the petition for termination of parental rights was procedurally proper.

## Service of Citation

Appellants further assert that service of citation of the petition for termination of parental rights was improper, as service by DCFS was requested for the following day in open court, was actually effectuated on that day, and was in violation of La. Ch.C. art. 1021. Louisiana Children's Code article 1021 states, "If a parent against whom a termination proceeding is instituted resides within the state, service of citation shall be made either personally or by domiciliary service not less than five days prior to commencement of the hearing on the matter." Comment (b) under La. Ch.C. art. 1021 states, "[P]arents asserting insufficient time after service in which to prepare a defense may request a continuance of the hearing as a matter of due process."

Generally, insufficiency of service and citation are declinatory exceptions that must be raised prior to or in the answer, or prior to or along with the filing of any pleading seeking relief. La. C.C.P. arts. 925 and 928. *Schilling v. Bernhard Bros. Mech. Contractors LLC*, 2012-2105 (La. App. 1st Cir. 9/13/13), 186 So. 3d 658, 663, *writ denied*, 2013-2378 (La. 12/6/13), 129 So. 3d 537. All objections which may be raised through the declinatory exception, except lack of jurisdiction over the subject matter of the action, are waived unless pleaded therein. La. C.C.P. art. 925(C).

As is reflected in the record, the petition for termination of parental rights was filed on January 28, 2020, service was requested to be conducted personally in open court on a previously scheduled hearing date of January 29, 2020, and service was

7

effectuated in open court on that date.[3] The minutes reflect that appellants had counsel present at the January 29, 2020 hearing when they entered denials to the petition for termination of parental rights. The record does not contain reference to any objection being made to service of citation or to a request for a continuance. Both appellants entered a denial to the petition for termination of parental rights, and the matter was set for a pre-trial conference on April 1, 2020. The pre-trial conference was actually continued on several occasions, and on July 8, 2020, the trial court held the pre-trial conference and set the trial to commence on September 21, 2020. A final pre-trial conference occurred on September 14, 2020, and the trial was held on September 21, 23, and 25, 2020, almost eight months after the petition for termination of parental rights was filed. Appellants did not seek a continuance or except to the service and citation. Therefore, appellants waived any assertion of improper service and citation. *See* La. C.C.P. arts. 925 and 928.

**Louisiana Children's Code article 1004.1 applies in both FINS and CINC cases**

Appellants assert that this matter originally began as a Child in Need of Care (CINC) case but was voluntarily converted to a Family in Need of Services (FINS) case. Appellants believed that a FINS case would ensure reunification with their children upon completion of the requirements of the case plan. In a FINS case, La. Ch.C. art. 776(A) clearly provides that if "a child enters the custody of the state, the provisions of Chapters 13, 15, and 16 of Title VI and Article 1004.1 shall be applicable." Therefore, appellants' "belief" that a FINS case would ensure reunification with their children is misplaced, as the mandatory provisions of La. Ch.C. art. 1004.1 apply once the applicable time period of the children in the custody of the state had passed. Furthermore, as explicitly noted in *State In Interest of T. D.*, 2016-708 (La. App. 5th Cir. 5/31/17), 221 So. 3d 290, 298, "the provisions for filing

---

[3] The transcript of the January 29, 2020 case review hearing is not contained in the record. Only the minutes from that hearing are available to this court.

8

for termination of parental rights are not located in that part of the Children's Code that provides for either FINS adjudications (Title VII), or for CINC cases, (Title VI), but are located in [a] totally separate section of the Children's Code (Title X)." Furthermore, "the Legislature has expressed its intent that courts shall construe the procedural provisions of Title X of the Children's Code relative to the involuntary termination of parental rights liberally." *State In Interest of T. D.*, 221 So. 3d at 298 (*quoting State ex rel. C.J.K.*, 2000-2375 (La. 11/28/00), 774 So. 2d 107, 114). Therefore, *State In Interest of T. D.*, concluded that there was nothing to support the claim that the termination of parental rights petition was somehow ineffective or flawed, because the child was taken into the custody of DCFS during a FINS case, and not a CINC case. Likewise, we find no support for appellants' argument that a CINC case was a necessary prerequisite for DCFS to file for termination of parental rights.

Appellants attempted to raise the merits of the trial court's decision at the oral argument. This court only reviews issues raised on appeal. *Duet v. Landry*, 2017-0937 (La. App. 1st Cir. 4/30/18), 250 So. 3d 918, 924, n.2. Further, all assignments of error and issues for review must be briefed, and the appellate court may consider as abandoned any assigned error or issue for review that has not been briefed. Uniform Rules—Courts of Appeal, Rule 2-12.4(B)(4); *Christian Schools, Inc. v. Louisiana High School Athletic Association*, 2020-0762 (La. App. 1st Cir. 2/19/21), ___So. 3d___, 2021 WL 651134, at * 2. As appellants failed to assign as error or raise any issue with regard to the merits, this court cannot review any arguments pertaining thereto.

## CONCLUSION

For the reasons set forth above, the October 7, 2020 judgment of the trial court terminating the parental rights of L.M. and J.M. as to S.M., N.M., B.M., D.M., K.M.,

and C.M., and certifying the minor children for adoption is affirmed. All costs of this appeal are assessed against L.M. and J.M.

**AFFRIMED.**